IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32954-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA JAMES HERSHAW, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — On appeal, Joshua Hershaw contends that the trial court lacked

authority, as part of his sentencing, to require that he complete mental health treatment.

Because Hershaw asked for the treatment, we apply the doctrine of invited error and

decline to address the merits of Hershaw's assignment of error.

FACTS

On September 18, 2014, Leigh Colton met Joshua Hershaw, and the two agreed to

trade a cell phone for a bicycle. On September 19, 2014, at 8:00 a.m., Colton and

Hershaw met at Colton's residence to execute the trade. During the interaction, Hershaw

uttered intimidating statements to Colton. He told her that he killed two people without

anyone knowing, informed her that he killed countless people in Iraq, and insinuated that

he would kill her boyfriend, Bill VonMetzger. Hershaw also told Colton that he used

methamphetamine.

After uttering his boastful and threatening comments, Joshua Hershaw rummaged through each room in Leigh Colton's house and collected objects he wanted. At 11:38 a.m., Hershaw rode from the residence on Bill VonMetzger's bicycle, while carrying a sword, a snowboard, and other treasures. As he departed, Hershaw warned Colton: "I better not find out this stuff is reported stolen." Clerk's Papers (CP) at 2. Colton left her abode and returned with VonMetzger at 6:50 p.m. to find Hershaw seated on her porch. The couple left the residence to call the police.

Walla Walla Police Officer Tracy Klem responded to Leigh Colton's call. After taking Colton's report, Officer Klem, along with two police detectives, traveled to Colton's residence to search for Joshua Hershaw. Hershaw was not present. The three officers returned to the police department and researched Hershaw's criminal history. The officers discovered that Hershaw garnered gross misdemeanor convictions for, among other things, vehicle prowling and possession of burglary tools. Oregon authorities most recently arrested Hershaw in May 2014 for first degree burglary.

At 11:15 p.m., a witness informed Officer Tracy Klem that Hershaw had returned to Leigh Colton's residence. Officer Klem returned to the home, found Hershaw, arrested him, and transported him to jail. After receiving *Miranda* warnings, Hershaw furnished police two recorded statements, in which he stated he was transient, a methamphetamine user, and on military disability. Hershaw insisted that he killed no one

2

outside of military combat and that Colton granted him permission to be present at her residence. Hershaw claimed he met Colton during time in drug rehabilitation and that she gifted him the valuables he removed from her garage earlier that day.

PROCEDURE

The State of Washington charged Joshua Hershaw with one count of burglary in the second degree. Less than one month later, Hershaw entered a guilty plea to the charge.

The trial court accepted Joshua Hershaw's guilty plea. Hershaw's statement on plea of guilty stated:

> In Considering the Consequences of My Guilty Plea, I Understand That . . . The prosecuting attorney will make the following recommendation to the judge: <u>FIRST TIME OFFENDER WAIVER; TIME SERVED SENTENCE, 12 MONTHS' COMMUNITY CUSTODY, PARTICIPATION IN MENTAL HEALTH AND DRUG TREATMENT THROUGH THE V.A. TO THE EXTENT AVAILABLE.</u>

CP at 9, 11. Neither side presented the court with a presentence report on Hershaw's mental health or competency.

At his sentencing hearing, Joshua Hershaw's counsel told the court:

> Your Honor, we are requesting the Court follow the recommendation in this case.
> The recommendation is that he [Joshua Hershaw] be sentenced to his time served, which I don't know the exact number of days, but it is in excess of the one month minimum.
> That he be sentenced according to a first time offender waiver. This would put him on community custody for a period of 12 months, during

3

which time he would be required to participate in mental health and drug treatment through the VA to the extent those services are available to him.

Your Honor, Mr. Hershaw has acknowledged that he has a substance problem and that he desires to get treatment for it.

This is a felony conviction. This is kind of crossing the Rubicon, so to speak, and I think it has been a bit of an eye opening experience for him about the extent of his problem and the need to address it.

I think that in conversations with the State this is going to be the best option that is available in terms of being able to address the underlying substance problem that seems to be driving the criminal behavior.

For those reasons, we think it is appropriate. He would, I believe, be released upon his release and he would be required to check in with the Department of Corrections and should be able to obtain a bed date from the VA very shortly thereafter.

Report of Proceedings (RP) at 4-5.

The State responded at the sentencing hearing:

Really the only thing the State has to hold him on is the first time offender waiver and hold him accountable and have him supervised.

He does have a number of prior gross misdemeanors and some were very, very recently handled. It's clear that he does have a serious substance abuse problem coupled with probably some mental health issues as a result of being a war veteran.

He does need to get this help and does need to get into treatment. And I'm hoping that he can get this bed date as quickly as counsel indicates that he can.

So the State is going along with this recommendation to ensure he continues to be held accountable.

RP at 5-6.

During the sentencing hearing, Joshua Hershaw informed the court: "I'm really wanting to go" to treatment, although he did not specify if he desired mental health treatment, substance abuse treatment, or both. RP at 7. The trial court found Hershaw

4

guilty and sentenced him as recommended. When ruling, the trial court found that

Hershaw had a chemical dependency that contributed to his offenses. The court entered

no finding regarding Hershaw's mental health. However, the trial court clarified in its

ruling:

> THE COURT: My question is, if he gets treatment through the VA, is that going to be inpatient?
> [DEFENSE COUNSEL]: That is the expectation, your Honor, yes.
> THE COURT: And for how long approximately?
> [DEFENSE COUNSEL]: I think the minimum in Washington is 28 days and I think through the VA, it would be to the extent it is needed.
> . . . .
> THE DEFENDANT: Yes. Yes, sir. The VA also has outpatient too and I could attend on a weekly basis too.
> THE COURT: Okay.
> THE DEFENDANT: So this could go on. I'm really wanting to go.

RP at 6-7.

## LAW AND ANALYSIS

Joshua Hershaw assigns error solely to the condition in his sentence that demands

he complete mental health counseling through a state licensed counselor at his own

expense. Hershaw argues that the condition is invalid because the trial court failed to

comply with RCW 9.94B.080. At the time of his sentencing, the statute required the trial

court to find that Hershaw was a "mentally ill person" as defined by RCW 71.24.025(20)

and that a qualifying mental illness influenced his crime, before imposing mental health

treatment as a community custody condition. Hershaw maintains that the trial court also

5

failed to base the sentence condition on a presentence report. He asks this court to strike the offending condition.

The State contends that Joshua Hershaw's joining in the State's recommendation for mental health treatment amounted to a stipulation to the necessary findings or constituted invited error. Additionally, the State argues that the Sentencing Reform Act of 1981, chapter 9.94A RCW, no longer includes the procedural requirements on which Hershaw relies. Finally, the State requests that, if this court determines that the trial court failed to make all required findings, the court remand for a new sentencing hearing rather than strike the offending condition. We agree that Hershaw invited any error so we do not review the State's remaining assertions.

RCW 9.94B.080 provides:

> The court may order an offender whose sentence includes community placement or community supervision to undergo a mental status evaluation and to participate in available outpatient mental health treatment, *if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense. An order requiring mental status evaluation or treatment must be based on a presentence report* and, if applicable, mental status evaluations that have been filed with the court to determine the offender's competency or eligibility for a defense of insanity. The court may order additional evaluations at a later date if deemed appropriate.

(Emphasis added.) Under this statute, the court, before ordering mental health treatment or an evaluation, must find that an offender is a mentally ill person as defined in RCW 71.24.025(20) and find that the offender's condition likely influenced the crime. *State v.*

6

*Brooks*, 142 Wn. App. 842, 851-52, 176 P.3d 549 (2008); *State v. Jones*, 118 Wn. App. 199, 209, 76 P.3d 258 (2003). When the record does not support imposition of mental health treatment, the condition should be struck. *See State v. Stark*, 183 Wn. App. 893, 896, 334 P.3d 1196 (2014), *review denied*, 183 Wn.2d 1019, 355 P.3d 1153 (2015); *State v. Locke*, 175 Wn. App. 779, 804, 307 P.3d 771 (2013), *review denied*, 179 Wn.2d 1021, 336 P.3d 1165 (2014).

We decline to address whether the record establishes that Joshua Hershaw suffers from a mental illness and whether any illness contributed to his engaging in the crime. Hershaw asked for the mental health treatment for good reason. The mental health treatment condition constituted a portion of the agreement reached between Hershaw and the State. By this agreement, Hershaw received community custody rather than a lengthy prison term. He received the benefit of a first time offender waiver that lowered his sentence to thirty-three days' confinement, rather than the maximum five years that the charge carried.

If the trial court committed any error, Joshua Hershaw encouraged the error. Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995). The invited error doctrine precludes a criminal defendant from seeking appellate review of an error he or she helped create, even when the alleged error involves constitutional rights. *State v. Studd*, 137 Wn.2d

7

No. 32954-2-III
*State v. Hershaw*

533, 546-47, 973 P.2d 1049 (1999); *State v. Henderson*, 114 Wn.2d 867, 870-71, 792 P.2d 514 (1990). The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996); *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995).

On appeal, Joshua Hershaw admits that he wanted to attend mental health treatment, but denies that he requested the treatment. We reject this distinction. We consider a party's informing the trial court of a desire as tantamount to requesting the subject of the desire.

CONCLUSION

We affirm Joshua Hershaw's sentence, including the community custody condition of mental health treatment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____     _____
Siddoway, C.J.                       Korsmo, J.

8